UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENELL GLOVER ET AL.,
                          Plaintiffs,                    20-cv-10924 (JGK)

          - against -                          MEMORANDUM OPINION
                                               AND ORDER
BOB'S DISCOUNT FURNITURE, LLC ET
AL.,
                          Defendants.

JOHN G. KOELTL, District Judge:

     The plaintiffs, Renell Glover and Claudia Musella, brought

this putative class action against Bob's Discount Furniture, LLC

("Bob's") and Guardian Protection Products, Inc. ("Guardian"),

alleging breach of contract and related non-contract claims. The

claims arise out of the plaintiffs' purchase of furniture and of

a protection plan for that furniture. The defendants now move to

dismiss the claims by Glover and to compel arbitration of or, in

the alternative, to dismiss the claims by Musella.

                              I.

     Bob's is a discount furniture store with several branches

in New York. Bob's offers a protection plan for its furniture

called "Goof Proof." The plans are administered by Guardian. The

complaint alleges that Guardian and Bob's worked in

"partnership," that Guardian "collaborates with . . . Bob's in

drafting the language and marketing material for the Goof Proof

plans," and that Guardian abetted Bob's misconduct. Compl. ¶¶

19, 30, 163, ECF No. 38.

In February 2017, Glover purchased a sofa and a Goof Proof plan from a Bob's store. In September 2017, Musella purchased a recliner and a Goof Proof plan from a Bob's store. Upon completing their purchases, each plaintiff was given a receipt. At the bottom of the front page of Glover's receipt was a sentence reading, "I have read and agree to the sale terms on the following page." Id. ¶ 127. At the bottom of the front page of Musella's receipt was a sentence reading, "The information contained on the subsequent pages of this document is an integral part of the agreement between the buyer and the seller." Id. ¶ 129. Both receipts also included a signature line, which neither plaintiff signed.

The following page included several terms. Both receipts included a one-year warranty against factory defects. Both receipts also included the following provision:

> Bob's Goof Proof is the best way to protect your investment from a wide variety of accidents for 5 years… If you purchased a Goof Proof Protection Plan and accidentally stain or damage your furniture then please . . . [c]all Guardian at (800) 538-9500 to report accidental stains or damage to your furniture.

Id. ¶ 137.

Glover's receipt further noted that the "[c]omplete Goof Proof Plan Terms and Conditions c[ould] be accessed at the" Bob's website. Id. Both receipts also included a section headed "Resolution of Disputes," which read:

> Any and all claims and/or disputes between you and Bob's
> arising out of and/or related to this agreement, any
> products and/or services sold and/or purchased through
> Bob's, and/or any performance of any services related to
> this agreement must be resolved exclusively by final and
> binding arbitration . . . pursuant to the rules of the
> American Arbitration Association . . . . The parties
> shall split the costs of arbitration and each party shall
> bear its own legal fees.

Id. ¶ 140. The section went on to provide some further

information on what arbitration entailed.

In November 2019, the frame of Glover's sofa "accidentally

broke." Id. ¶ 43. Glover submitted a claim to Guardian. The

Guardian representative asked that Glover submit further

information, which Glover did. Guardian then denied Glover's

claim. In its letter to Glover, Guardian noted: "[Y]our plan

states all damages must be relatable to an accidental

occurrence. You reported that you did not know what caused the

leaning against it, therefore the damage was deemed ineligible

for coverage." Id. ¶ 46.

In December 2019, Musella noticed small tears in the fabric

of her recliner. Musella contacted Bob's, which declined to

compensate Musella, informing her that the factory-defect

warranty had expired, and that the Goof Proof plan covered "one

time damages that have resulted from a single incident." Id. ¶

56.

Musella and Glover brought this putative class action,

alleging breach of contract and related non-contract claims. Now

before the Court are the defendants' motions to dismiss the claims by Glover and to compel arbitration of or, in the alternative, to dismiss the claims by Musella.

## II.

### A.

Because state contract law governs whether the parties agreed to arbitrate, it is first necessary to determine which state's law applies. New York law applies to this claim because both parties cite to New York cases and neither party has contested the applicability of New York law. The parties' "implied consent is sufficient to establish choice of law." Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d. Cir 2000).[1]

In deciding a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Thus, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." Id. If there is no "genuine issue of material fact" as to the arbitrability of the dispute, the Court may decide the motion without a trial.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

4

Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012). The facts relevant to the motion to compel arbitration are not disputed in this case.

The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., provides that agreements to arbitrate are valid and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." Id. § 2. Validity, revocability, and enforceability are determined by reference to state law. Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31 (2009).

The party seeking arbitration bears the initial burden of showing that an agreement to arbitrate existed. Hines v. Overstock.com, 380 F. App'x 22, 24 (2d Cir. 2010). The burden then shifts to the party resisting arbitration to show that the agreement is inapplicable or invalid. Id.

**B.**

In this case, the back of Musella's receipt includes an arbitration provision. However, Musella argues that there is no agreement to arbitrate because Musella did not sign the receipt. See Hines, 380 F. App'x at 24-25. This argument is without merit. A party may be bound by an agreement to arbitrate even if the party did not sign it so long as "it is evident that the parties intended to be bound by the contract." God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP, 845 N.E.2d 1265, 1266 (N.Y. 2006); Beautyko, LLC v. FedEx Ground

Package Sys., Inc., No. 14-cv-37, 2015 WL 224361, at *3
(S.D.N.Y. Jan. 16, 2015). A party may demonstrate its intent to
be bound by ratifying a contract. See Just In-Materials Designs
v, Ltd. v. I.T.A.D. Assocs., Inc., 462 N.E.2d 1188, 1189 (N.Y.
1984).

A party may ratify a contract by "intentionally accepting
benefits under the contract, by remaining silent or acquiescing
in the contract for a period of time after he has the
opportunity to avoid it, or by acting upon it." VKK Corp. v.
Nat'l Football League, 244 F.3d 114, 122-23 (2d Cir. 2001).
"Acceptance and retention of the goods constitutes ratification
of the agreement between the parties." Nat'l City Com. Cap. Co.,
LLC v. Becker Real Est. Servs., Inc., 885 N.Y.S.2d 173, 177
(Sup. Ct. 2009). This principle extends to terms of a contract
to arbitrate which the party did not read if the party was on
inquiry notice of the terms. See Plazza v. Airbnb, Inc., 289 F.
Supp. 3d 537, 548 (S.D.N.Y. 2018). A party is on inquiry notice
if a "reasonably prudent" party "would have noticed . . . and
reviewed the terms." Whitt v. Prosper Funding LLC, No. 15-cv-
136, 2015 WL 4254062, at *5 (S.D.N.Y. July 14, 2015). A party
may also ratify a contract by suing on the contract. God's
Battalion, 845 N.E.2d at 1267.

In this case, Musella's failure to repudiate the contract
constitutes ratification. Musella had adequate notice of the

arbitration clause. The first page of her receipt included a sentence that read: "The information contained on the subsequent pages of this document is an integral part of the agreement between the buyer and the seller." This was sufficient to alert Musella of the terms present on the reverse. See Infinity Indus., Inc. v. Rexall Sundown, Inc., 71 F. Supp. 2d 168, 172 (E.D.N.Y. 1999). Musella then accepted the goods without protest until over two years after receiving her recliner.

This case is therefore unlike the cases cited by Musella. Those cases involved documents in which there was "nothing on the [first page] . . . directing the customer to the restrictions on the reverse side," Gildor v. U.S. Postal Serv., 179 F. App'x 756, 759 (2d Cir. 2006), or where any such directions gave no indication that the reverse side might restrict a party's rights. Arthur Philip Exp. Corp. v. Leathertone, Inc., 87 N.Y.S.2d 665, 667 (App. Div. 1949). In this case, Musella was amply made aware that the reverse side contained terms that might affect Musella's rights, and one of the bolded, underlined headings on the reverse side was Resolution of Disputes," which referred to the arbitration procedure. Compl. Ex. B. Because Musella had adequate notice of the arbitration clause, Musella's failure to repudiate the contract constitutes acceptance of the arbitration clause. See

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Oliver, No. 15-cv-4971, 2016 WL 344980, at *3 n.1 (S.D.N.Y. Jan. 27, 2016).

Moreover, Musella further ratified the contract by bringing a claim for breach of the contract. See God's Battalion, 845 N.E.2d at 1267. For these reasons, Musella ratified the arbitration clause, and is bound by it. Bob's and Guardian have therefore met their initial burden of showing that there was an agreement to arbitrate.

c.

Musella appears to argue in the Complaint that the arbitration provision is unconscionable. However, Musella abandons that argument by failing to repeat it in her opposition. See Mosha v. Yandex Inc., No. 18-cv-5444, 2019 WL 5595037, at *8 (S.D.N.Y. Oct. 30, 2019). In any event, this argument is without merit.

In New York, a provision in an arbitration agreement is unconscionable if "it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010). Generally, there must be a showing that such a contract is both procedurally and substantively unconscionable. Id. A showing of both procedural and substantive unconscionability is required in all but "exceptional cases" in

which a provision is "so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." Gillman v. Chase Manhattan Bank N.A., 534 N.E.2d 824, 829 (N.Y. 1988). "The procedural elements of unconscionability concern the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract." Ragone, 595 F.3d at 121-22.

The plaintiff does not explain how the arbitration clause was either procedurally or substantively unconscionable. The cost of arbitration is not prohibitive. See Hale v. First USA Bank, N.A., No. 00-cv-5406, 2001 WL 687371, at *4 (S.D.N.Y. June 19, 2001). In any event, Guardian has agreed to pay Musella's filing fee. Musella has therefore not met its burden of showing that the arbitration clause is either procedurally or substantively unconscionable and thereby unenforceable.

### D.

Because there is an agreement to arbitrate, because Musella has not shown that the agreement is unenforceable, and because the agreement covers "[a]ny and all claims and/or disputes between [Musella] and Bob's arising out of and/or related to this agreement, any products and/or services sold and/or purchased through Bob's, and/or any performance of any services related to this agreement," which language plainly covers this

dispute, Bob's motion to compel arbitration of Musella's claims against Bob's is **granted**.

### E.

The arbitration clause was not signed by Guardian. However, "under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004).[2]

In determining whether a signatory's claims are intertwined with the underlying contract obligations, courts examine (1) whether the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there was a close relationship between the non-signatory and the estopped party. See Ragone v. Atl. Video at Manhattan Ctr., No. 07-cv-6084, 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008), aff'd, 595 F.3d 115 (2d Cir. 2010). In this case, both prongs are satisfied.

---

[2] While Stolt-Nielsen referred to a non-party binding a "signatory" to an arbitration agreement by principles of estoppel, those same principles apply in this case to bind Musella to the arbitration agreement even though Musella did not sign the agreement because, for the reasons explained above, Musella ratified the agreement.

First, Musella's claims against Guardian plainly arise under the subject matter of the underlying agreement, because Musella's claims essentially depend on Guardian's having obligations in connection with the sale of the furniture and the protection plan that were the subject matter of the agreement. Musella cannot seek to hold Guardian liable under the contract and also "repudiate the contract and its arbitration clause when [Musella] believe[s] it works against" her. Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co., No. 98-cv-7181, 1999 WL 637236, at *7 (S.D.N.Y. Aug. 20, 1999).

Second, there was a sufficiently close relationship between signatory Bob's and non-signatory Guardian. Based on the allegations in the complaint, Guardian played a substantial role in Bob's providing the protection plan, namely, by administrating the plan. The complaint alleges that Guardian and Bob's worked in "partnership," that Guardian abetted Bob's misconduct, and that Guardian "collaborates with . . . . Bob's in drafting the language and marketing material for the Goof Proof plans." The facts forming the basis of the claims are in large part pleaded against Bob's and Guardian as a single unit. These circumstances constitute a sufficiently close relationship for the purposes of estoppel. See, e.g., Meridian Autonomous Inc. v. Coast Autonomous LLC, No. 17-cv-5846, 2020 WL 496078, at *2-3 (S.D.N.Y. Jan. 30, 2020).

Accordingly, Musella's claims against Guardian are intertwined with the contract between Musella and Bob's and it would be inequitable to allow Musella to escape the contract's obligation to arbitrate with respect to Guardian. See, e.g., Ragone, 2008 WL 4058480, at *10. Therefore, Guardian's motion to compel arbitration of Musella's claim is **granted**.

Because Musella is required to arbitrate her claims against Bob's and Guardian, both the motions to dismiss Musella's claims are **denied** as moot.

### III.
#### A.

Bob's and Guardian move to dismiss Glover's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In deciding a motion to dismiss, the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider documents that are integral to the complaint or incorporated by reference, such as contracts. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71-72 (2d Cir. 1995).

#### B.

Glover brings a claim for breach of contract. To state a breach of contract claim under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate

12

performance of the contract by the plaintiff, (3) breach of
contract by the defendant, and (4) damages." Eternity Glob.
Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168,
177 (2d Cir. 2004).

Glover has failed to state a claim for breach of contract
against the defendants because Glover has not adequately alleged
that the defendants breached the contract. To allege the
"breach" element of a breach of contract claim, a plaintiff must
"identify, in non-conclusory fashion, the specific terms of the
contract that a defendant has breached." Wallert v. Atlan, 141
F. Supp. 3d 258, 286 (S.D.N.Y. 2015). In this case, Glover
argues that she is entitled to coverage under the Goof Proof
protection plan, and that the defendants breached the contract
by failing to compensate her when her furniture was damaged.
However, Glover fails to identify the specific term in the
contract that would entitle her to coverage. The description of
the plan in the receipt notes generally that Goof Proof protects
against "a wide variety of accidents." See Compl. Ex. A. The
receipt links to the full terms of the plan, but Glover has not
identified which specific term in the plan entitles her to
compensation for her complaint. Moreover, because Glover alleges
only that her sofa "accidentally broke," Glover has failed to
allege specifically that the damage to her sofa fell within the
"wide variety of accidents" covered by the plan.

Glover also refers to the one-year factory-defect warranty. However, Glover alleges that she purchased her sofa in February 2017, and that the sofa broke in November 2019, well over a year after the purchase. The warranty had therefore expired. Moreover, this warranty was against factory defects. Glover alleges that the sofa "accidentally broke," which may not be a factory defect.

Accordingly, Glover has not alleged that she was entitled to compensation under the Goof Proof plan or the one-year factory defect warranty, and therefore Glover has not alleged that the defendants breached the contract by failing to compensate her.

Glover has failed to state a claim against Guardian for the additional reason that Glover has not alleged adequately an agreement between Guardian and Glover. Glover purchased a Goof Proof plan from Bob's. Glover had no interaction with Guardian; the only reference to Guardian anywhere on the receipt is in the direction that Glover contact Guardian to report any damages. These facts are not sufficient to allege that Guardian undertook any obligation towards Glover.

**c.**

Glover also brings claims for breach of express and implied warranty. However, under New York law, "express and implied warranties apply only to the sale of goods; there is no cause of

action for breach of warranty in the performance of a service. All transactions where service predominates are indeed immune from express and implied warranty analysis." Mill-Run Tours, Inc. v. Windstream Servs. LLC, No. 16-cv-7052, 2017 WL 2930932, at *4 (S.D.N.Y. July 7, 2017). The Goof Proof plans are plainly services, rather than goods: they provide cleaning, repair, or replacement services for goods but are not themselves contracts for the sale of goods. Indeed, the complaint expressly describes the plan as a "service contract." Accordingly, to the extent that Glover claims that the defendants breached warranties with respect to the Goof Proof plans, there are no applicable warranties, and the claims for breach of express and implied warranties fail.

The claim for breach of express warranty also fails for the same reason as the breach of contract claim: Glover has not alleged any statement that suggested that the Goof Proof plans covered more than the plans in fact covered and Glover has not "set forth the terms of the warranty" that were allegedly breached. In re Lyman Good Dietary Supplements Litig., No. 17-cv-8047, 2018 WL 3733949, at *11 (S.D.N.Y. Aug. 6, 2018); accord Navitas LLC v. Health Matters Am., Inc., No. 16-cv-699V, 2018 WL 1317348, at *9 (W.D.N.Y. Mar. 14, 2018).

### D.

Glover also brings a claim under the Magnuson Moss Warranty Act ("MMWA"). Federal court jurisdiction over claims arising under the MMWA is limited to claims satisfying certain jurisdictional elements. See 15 U.S.C. § 2310(d)(3); Wood v. Maguire Auto., LLC, 508 F. App'x 65, 65 (2d Cir. 2013). One such requirement is the requirement that, "if the action is brought as a class action, . . . the number of named plaintiffs [be at least] . . . one hundred." 15 U.S.C. § 2310(d)(3)(C). Well-reasoned decisions have held that this provision excludes other grounds for jurisdiction for a claim under the MMWA, see, e.g., Monopoli v. Mercedes-Benz USA, LLC, No. 21-cv-1353, 2022 WL 409484, at *6 (N.D. Ga. Feb. 10, 2022), and that courts therefore lack jurisdiction over MMWA claims unless there are at least 100 named plaintiffs. Gavilanes v. Gerber Prods. Co., No. 20-cv-5558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021). Because there are not 100 named plaintiffs in this class action, the Court lacks jurisdiction over the MMWA claims, and those claims are dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

In any event, the MMWA does not create any new bases for liability, but merely "federalizes state-law breach of warranty claims." Cosgrove v. Oregon Chai, Inc., 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021). Accordingly, because Glover has not adequately

alleged any state-law breach of warranty claims, Glover has not stated a claim under the Magnuson Moss Warranty Act.

### E.

Glover also brings claims for fraud and negligent misrepresentation. Under Federal Rule of Civil Procedure 9(b), claims of fraud are subject to a heightened pleading standard, under which "a party must state with particularity the circumstances constituting fraud." In this case, for the same reasons that Glover has failed to state a breach of contract claim, Glover has failed to allege that any statement made in the receipt was false. Glover also does not specifically identify any allegedly false statement that was made about the furniture or the policy outside the receipt or the contract. Glover's allegation that Bob's sales representatives had incentives to misrepresent the scope of the Goof Proof coverage is entirely conclusory and does not meet the pleading standard required to survive a motion to dismiss under Rule 12(b)(6), let alone the heightened standard of Rule 9(b). Accordingly, Glover's claims for both fraud and negligent misrepresentation fail.

### F.

Glover also brings claims under New York General Business Law §§ 349 and 350, which prohibit "[d]eceptive acts or practices" and "[f]alse advertising in the conduct of any

business, trade or commerce or in the furnishing of any service." While claims under sections 349 and 350 are not subject to Rule 9(b)'s heightened pleading requirements, see Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); Mitchell v. Whole Foods Mkt. Grp., Inc., No. 20-cv-8496, 2022 WL 657044, at *2 (S.D.N.Y. Mar. 4, 2022), a plaintiff must nonetheless identify the specific acts or practices alleged to be misleading. See, e.g., id.; Woods v. Maytag Co., No. 10-cv-559, 2010 WL 4314313, at *14-15 (E.D.N.Y. Nov. 2, 2010).

In this case, Glover alleges as a deceptive practice the sale of the Good Proof plans. However, as explained above, Glover has not alleged adequately that either defendant wrongfully denied her coverage under the policy. Accordingly, Glover has not alleged that she was deceived by the sale of the policy. Because Glover fails specifically to allege any other deceptive practice, Glover's claims under sections 349 and 350 fail. See Horowitz v. Stryker Corp., 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009). Glover's claim under section 350 fails for the additional reason that the plaintiff has not alleged any advertisement.

### G.

Finally, Glover brings a claim for unjust enrichment. But an unjust enrichment claim lies only "in unusual situations when, though the defendant has not breached a contract nor

18

committed a recognized tort, circumstances create an equitable

obligation running from the defendant to the plaintiff," and not

where the claim "simply duplicates, or replaces, a conventional

contract or tort claim." Corsello v. Verizon N.Y., Inc., 967

N.E.2d 1177, 1185 (N.Y. 2012). In this case, Glover's unjust

enrichment claim merely repackages her defective contract and

tort claims, and therefore fails for the same reasons: Glover

has not identified any benefit that was conferred on the

defendants unfairly. See, e.g., id.; Brady v. Anker Innovations

Ltd., No. 18-cv-11396, 2020 WL 158760, at *12 (S.D.N.Y. Jan. 13,

2020).

### Conclusion

The Court has considered all of the arguments of the

parties. To the extent not specifically addressed above, the

arguments are either moot or without merit. For the foregoing

reasons, the defendants' motions to compel arbitration of

Musella's claims are **granted**. The defendants' motions to dismiss

Musella's claims are **denied** as moot. The defendants' motions to

dismiss Glover's claims are **granted** without prejudice to

Glover's ability to file an amended complaint. Glover may file a

third amended complaint within 30 days of the date of this

Memorandum Opinion and Order. The Clerk is directed to close all

pending motions.

**SO ORDERED.**
Dated:        New York, New York
              **August 12, 2022**

                                        **John G. Koeltl**
                            **United States District Judge**